UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NATE STIMSON<br><br>Plaintiff,<br><br>v.<br><br>STRYKER SALES CORPORATION,<br><br>Defendant. | CIVIL ACTION NO.:<br>1:17-CV-00872-JPB |

## ORDER

This matter is before the Court on Stryker Sales Corporation's ("Defendant") Petition for Reasonable Fees and Costs Incurred in Litigating its Motion for Sanctions [Doc. 101]. This Court finds as follows:

### BACKGROUND AND PROCEDURAL HISTORY

Nate Stimson ("Plaintiff") filed this retaliation and age discrimination case against Defendant on March 9, 2017. [Doc. 1]. Pursuant to Northern District of Georgia Standing Order No. 18-01, the case was automatically referred to United States Magistrate Judge Janet F. King to hear and determine any pretrial matters and submit reports and recommendations.

Relevant here, on May 31, 2018, Defendant filed a Motion for Discovery Sanctions Including Dismissal of Complaint with Prejudice. [Doc. 63]. On July

16, 2018, Defendant moved for summary judgment. [Doc. 73]. Judge King issued her Report and Recommendation concerning the two motions on January 24, 2019. [Doc. 93].

Both parties filed objections to the Report and Recommendation. After considering those objections, on November 12, 2019, the Court adopted in part and rejected in part, the Magistrate Judge's recommendation. [Doc. 100]. In doing so, the Court granted Defendant's Motion for Summary Judgment in its entirety. Id. at 28. The Court also granted Defendant's Motion for Sanctions after determining that Plaintiff acted in bad faith by lying during his deposition.[1] Id. at 26. As to the appropriate sanction for Plaintiff's misconduct, this Court did not dismiss Plaintiff's claims. Instead, the Court determined that the appropriate sanction was an award of attorney's fees to Defendant. Id. at 27. Defendant was thus ordered to submit, within fourteen days, a statement of its reasonable fees and costs in litigating the motion. Id. at 28.

On December 11, 2019, before this Court could determine the appropriate fee award, Plaintiff filed an appeal to the Eleventh Circuit Court of Appeals. [Doc.

---

[1] Plaintiff lied about accessing his phone while litigation was pending. More specifically, during Plaintiff's deposition, Plaintiff testified that the cell phone at issue had been locked in a closet for the entire duration of the litigation. The evidence, however, showed that Plaintiff installed and uninstalled data wiping software on the cell phone while litigation was pending.

103]. On November 30, 2020, the Eleventh Circuit affirmed this Court's order on the Magistrate Judge's Report and Recommendation. [Doc. 111]. As to the portion of the order regarding sanctions, the Eleventh Circuit determined that this Court correctly found that Plaintiff had acted in bad faith. Id. at 11. The Eleventh Circuit also determined that this Court did not abuse its discretion in ordering Plaintiff to pay Defendant's attorney's fees. Id.

Per the fee application, Defendant seeks to recover $77,630.07, which includes both its attorney's fees and forensic expert fees. [Doc. 101, p. 3]. Plaintiff opposes *any* award of fees and argues that: (1) the evidence supplied by Defendant is insufficient to sustain the award; (2) the amount requested is outrageous and excessive; and (3) the fees incurred were not the direct result of Plaintiff's misconduct. [Doc. 102]. The matter is now ripe for review.[2]

## ANALYSIS

"Federal courts possess potent inherent powers that they may use to 'fashion an appropriate sanction for conduct which abuses the judicial process.'" Peer v.

---

[2] After the initial briefing closed, the Court ordered Defendant to file a reply addressing certain arguments raised by Plaintiff in his opposition brief. See December 20, 2021 Docket Entry. As instructed, Defendant filed its Reply in Support of its Petition for Reasonable Fees and Costs Incurred in Litigating its Motion for Sanctions. [Doc. 113]. Thereafter, Plaintiff filed his Motion for Leave to File Surreply. [Doc. 114]. The motion is unopposed, and therefore **GRANTED**. The Clerk is **DIRECTED** to docket Plaintiff's Surreply. [Doc. 114-1]. In deciding the present issue, the Court will thus consider both the Reply and Surreply.

Lewis, 571 F. App'x 840, 844 (11th Cir. 2014) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)). "[O]ne permissible sanction is an 'assessment of attorney's fees' . . . instructing a party who has acted in bad faith to reimburse legal fees and costs incurred by the other side." Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017) (quoting Chambers, 501 U.S. at 45).

As a general rule, when sanctions are imposed, the sanction must be compensatory rather than punitive in nature. Id. This means that the fee award "may go no further than to redress the wronged party 'for losses sustained.'" Id. (quoting Mine Workers v. Bagwell, 512 U.S. 821, 829 (1994)). Importantly, the court "may not impose an additional amount as punishment for the sanctioned party's misbehavior." Id.

As previously stated, Defendant seeks to recover both its attorney's fees and the costs of the forensic expert. Both requests are addressed below.

1. The Attorney's Fees

Defendant argues that it is entitled to $48,132.60 in attorney's fees, which represents 92.5 hours of work performed by seven different timekeepers at varying hourly rates. To substantiate the motion, Defendant provided a two-page document entitled "Total Attorney's Fees." [Doc. 101-1]. This document listed the names of the attorneys who worked on the litigation, their hourly rates and the

4

number of hours billed. Id. The document also contained a general description of the services provided. Id. In addition, Defendant also provided several affidavits: the Declaration of Catherine S. Ryan [Doc. 101-3, p. 2], the Declaration of David R. Cohen [Doc. 113-1] and the Declaration of Edward P. Cadagin [Doc. 113-2].

The substantive filings related to the Motion for Sanctions include: (1) the Motion for Sanctions; (2) the Reply to Plaintiff's Opposition to Motion for Discovery Sanctions; (3) the objections to the Final Report and Recommendation; and (4) the Motion for Attorney's Fees.

A party seeking an award of attorney's fees bears the burden of documenting the appropriate hours and hourly rate. Coastal Fuels Mktg., Inc. v. Fla. Exp. Shipping Co., 207 F.3d 1247, 1252 (11th Cir. 2000). Courts in the Eleventh Circuit employ the federal "lodestar" approach to set reasonable fee awards. See Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). Under the lodestar approach, courts properly calculate an initial estimate of reasonable attorney's fees "by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888 (1984) (citation omitted). The "lodestar" may then "be adjusted for the results obtained." Loranger, 10 F.3d at 781.

a. Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). This Court recognizes that all but one of Defendant's attorneys practice law and bill in the Pittsburgh, Pennsylvania area. Importantly, the relevant market for determining the reasonable hourly rate is "'the place where the case is filed.'" Griffith v. McDonough, No. 20-14464, 2021 WL 4461605, at *1 (11th Cir. Sept. 29, 2021) (quoting Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999)). Because this case was filed in Atlanta, Georgia, the Court will use Atlanta as the relevant market for determining the reasonable hourly rate. Similar to the total award of fees, "[t]he applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." Norman, 836 F.2d at 1299. "An applicant can meet its burden of supporting its hourly rate by producing direct evidence of rates charged in similar cases, or by presenting opinion evidence of reasonable rates." Kearney v. Auto-Owners Ins., 713 F. Supp. 2d 1369, 1376 (M.D. Fla. 2010).

In this case, Defendant contends that the hourly rates of the seven attorneys performing work are as follows:

| Attorney | Hourly Rate |
| --- | --- |
| Glunt, James (partner) | $539.39 |
| Ryan, Catherine (partner) | $510.00 |
| Bouriat, Christopher (senior associate) | $464.00 |
| Cohen, David (partner) | $780.00 |
| Lust, Karen (partner) | $552.00 |
| Dimond, Emily (associate) | $405.00 |
| Cadagin, Edward (associate) | $400.00 |

This Court must determine whether the above hourly rates are reasonable (i.e., whether they represent the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation). The Court will begin by discussing the skills, experience and reputation of the involved timekeepers. James F. Glunt is a partner at Reed Smith LLP who charges an hourly rate of $539.39. [Doc. 101, p. 3]. Glunt has twenty years of experience defending companies in complex labor and employment disputes and has been recognized as one of the "Best Lawyers in

America" for labor and employment litigation every year for the past eight years. Id. at 10-11. He has acted as lead counsel throughout much of the litigation. Id. at 10.

Catherine Ryan charges an hourly rate of $510. Currently, Ryan is a labor and employment partner at Reed Smith LLP. Id. at 11. Significantly, she has over twenty years of experience and has been recognized as one of "The Best Lawyers in America." Id. In this case, she primarily acted as a supervisor and consulted on the overall strategy of the litigation related to the Motion for Sanctions. Id.

Christopher S. Bouriat is a senior associate at Reed Smith LLP and charges an hourly rate of $464. Bouriat has over eight years of experience litigating complex employment matters. Id.

David Cohen's billable rate is $780 per hour. Cohen is currently a partner at Reed Smith LLP and has over thirty years of experience as a lawyer. [Doc. 113-1, p. 1]. Id. This experience includes overseeing an Automated Litigation Support Department, founding an E-Discovery Analysts and Technology Practice Group and leading a firm's Records and E-Discovery Group that employs more than seventy lawyers. Id. at 1-2. Through his practice, he focuses on serving as special e-discovery counsel, representing companies in complex litigation matters and counseling clients on records management and litigation readiness issues. Id. at 3.

Karen Lust's billable rate is $552 per hour. Lust graduated from law school in 2009 and began working for Reed Smith LLP in 2011. Id. at 4. After spending a decade working in the firms Records and E-Discovery Group, she became a partner in 2021. Id. She has counseled clients on data privacy and security issues during her more than ten-year career with Reed Smith LLP. Id.

Emily Dimond is an associate with a billable rate of $405 per hour. Dimond graduated from law school in 2012 and worked as an associate in Reed Smith's Records and E-Discovery Practice Group from 2013 until 2019. Id. at 3. During her six years as an associate, Dimond counseled clients on the management and discovery of electronic information. Id. at 4.

Edward Cadagin charges $400 per hour. Cadagin has specialized in employment litigation for the past eight years and has litigated employment cases in federal courts across numerous states. [Doc. 113-2, p. 2-3]. Cadagin asserts that his $400 hourly rate is reasonable and customary for attorneys with similar education, training and experience who practice law in metropolitan Atlanta. Id.

This Court must next access the Atlanta area's prevailing market rate for similar services of lawyers of reasonably comparable skills, experience and reputation. In determining whether the requested rate is in line with the prevailing

market rate, this Court may rely on its own knowledge and experience regarding reasonable hourly rates. Norman, 836 F.2d at 1303.

Several cases guide this Court's analysis here. In a 2017 employment discrimination case, a United States District Court for the Northern District of Georgia approved an hourly rate of $250 for an associate attorney and an hourly rate of $400 for a partner. See Scott v. Novartis Pharms. Corp., No. 1:14-cv-04154 (N.D. Ga. Jan. 31, 2017) (order granting defendants' request for fees). In another employment law case, a United States District Court for the Northern District of Georgia approved an hourly rate of $400 for a partner and $325 for an associate. See Eason v. Bridgewater & Assocs., 108 F. Supp. 3d 1358, 1364-64 (N.D. Ga. 2015). Based on this Court's experience, hourly rates have increased since 2015 and 2017 when these other cases were decided. As a result, this Court finds that the requested partner rates are reasonable, especially given the partners' respective levels of experience. The associates' rates, which span from $400 to $464, are likewise reasonable. Ultimately, this Court finds that the rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Yule v. Jones, 766 F. Supp. 2d 1333, 1343 (N.D. Ga. 2010) (citations omitted).

      b. Number of Hours Reasonably Expended

The Court must also ascertain the number of hours reasonably expended toward litigating the Motion for Sanctions. Here, Defendant's fee application shows that Defendant's attorneys billed a total of 92.5 hours. Plaintiff asserts that Defendant's application is insufficient to support an award of fees because: (1) the application contains redundant billing; (2) the application lacks specificity; and (3) the timekeepers spent excessive time on certain tasks.

      i. Redundant Billing

In the Eleventh Circuit, "excessive, redundant or otherwise unnecessary" hours should be excluded from the amount claimed. Norman, 836 F.2d at 1301 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). Such hours "generally occur where more than one attorney represents a client." Id. at 1301-02. Significantly, it is not inherently unreasonable for a client to have multiple attorneys. Barnes, 168 F.3d at 432. Here, Defendant has employed a firm and seven different attorneys have contributed to Defendant's defense. Because it is not inherently unreasonable to have more than one attorney, a reduction for redundant hours "is warranted only if the attorneys are unreasonably doing the same work." Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983). In fact, "[a]n award for time spent by two or more

attorneys is proper as long as it reflects the distinct contribution of each lawyer." Id.  A fee applicant bears the burden of showing "that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation."  Barnes, 168 F.3d at 432.  Importantly, where there is an objection raising the issue of redundant billing, as was the case here, the fee applicant's burden "is not a make-believe burden."  Id.

In this case, seven different timekeepers worked on the Motion for Sanctions, and oftentimes, multiple attorneys worked on the same task.  The billing records presented by Defendant make it impossible to determine whether the timekeepers were unreasonably doing the same work.  For example, in the first billing block, Glunt, Ryan and Bouriat reviewed the forensic ESI report, conferred with the forensic expert and reviewed Plaintiff's competing expert report.  The total billing for the first block amounted to 8.8 hours.  The billing records are missing any indication of the distinct contribution that each attorney made to the identified tasks.  Accordingly, as to the first billing block, this Court finds that Defendant did not carry its burden of showing that it is entitled to recover for the hours of each of the attorneys employed on the task.  See Barnes, 168 F.3d at 435 (reducing a nearly identical description of legal services that involved multiple

lawyers). As such, this Court excludes as redundant the hours of Ryan (.7) and Bouriat (1.8).

The second billing block shows that four different timekeepers researched case law, reviewed the research and strategized, drafted the motion and drafted the brief in support of the motion, for a total billing of 26.4 hours. For the same reasons that the hours were reduced in the first block, this Court excludes as redundant the hours of Bouriat (10.2), Ryan (1.3) and Dimond (1.0). Similarly, in the third billing block, two different timekeepers drafted letters to Plaintiff's counsel. Absent an explanation as to why multiple attorneys were needed for this task, reducing the hours of one of the timekeepers is required. As a result, this Court excludes as redundant the hours of Glunt (7.1).

The fourth billing block shows that three different timekeepers reviewed case law on ESI spoilation for use in the reply brief, reviewed Plaintiff's opposition brief and drafted the reply. Because Defendant failed to meet its burden of showing the distinct contribution of each lawyer, the Court excludes as redundant the hours of Bouriat (0.5) and Ryan (0.1). The fifth billing block indicates that three different timekeepers reviewed the Report and Recommendation and drafted an opposition to the Report and Recommendation. For the same reason that the other hours have been reduced, the Court excludes as

redundant the hours of Glunt (8.2) and Cohen (1.3). Finally, as to the sixth block, two different timekeepers communicated with the client regarding the ESI spoilation and the Motion for Sanctions. The Court will thus exclude as redundant the hours of Bouriat (1.2).

      ii.    Lack of Specificity—Block Billing

As stated previously, Plaintiff argues that Defendant should not be awarded any fees at all because the billing summary is not adequately detailed. Plaintiff asserts that Defendant's billing summary is akin to block billing.

Block billing is the practice of listing all of the day's tasks on a single entry, without separately identifying the time spent on each task. Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC, 476 F. App'x 198, 203 (11th Cir. 2012). The Eleventh Circuit has explained that block billing results in imprecision in an attorney's records. Id. "When attorneys include multiple tasks in a single time entry, courts cannot determine the amount of time spent on particular tasks." Kearney, 713 F. Supp. 2d at 1377-78. "While attorneys cannot be expected to account for every second of their time, they should be expected to explain in discrete entries the nature of the work that they want a client or opposing party to pay them hundreds of dollars to perform." Id. at 1378. Where block billing

occurs, "across-the-board reductions" have been approved by courts to offset the effects of block billing. Ceres Env't Servs., 476 F. App'x at 203.

Defendant did not provide the Court with discrete billing entries. By way of example, Defendant logged 26.4 hours for reviewing case law, reviewing research and drafting the motion and brief. This block billing is excessively vague. See Kearney, 713 F. Supp. 2d at 1379 (recognizing that courts may eliminate or reduce an award where a time entry is excessively vague). Moreover, this method of billing prevents the Court from ascertaining exactly how many hours were dedicated to brief-writing versus reviewing the research. This Court will thus reduce the total hours requested by 10% across the board. See McBride v. Legacy Components, LLC, No. 8:15-cv-1983, 2018 WL 4381181, at *2-3 (M.D. Fla. Aug. 30, 2018) (applying an across-the-board reduction to block billed hours).

   iii. Excessive Hours

Plaintiff claims that some of the hours billed on certain activities was excessive. Specifically, Plaintiff takes issue with the 7.1 hours Glunt billed for writing letters to Plaintiff's counsel. This argument need not be addressed because Glunt's hours were already eliminated as redundant.

Plaintiff also takes issue with the 3.3 hours Cadagin spent reviewing the pleadings for compliance with the Local Rules. Review of the record shows that

Cadagin reviewed at least thirty-six pages for compliance. In this Court's view, 3.3 hours is an appropriate amount of time to devote to such a task. As a result, this Court will not reduce these hours as excessive.

After eliminating the redundant hours and applying the across-the-board reduction, this Court finds that 53.2 hours (59.1 total hours less 10%) represents the reasonable number of hours necessary for the Motion for Sanctions. For further clarification, see the chart below.

| Billing Block | Time | Rate | Allowed Fee after 10% Reduction |
|---|---|---|---|
| 1 | 6.3 | $539.39 | $3,058.34 |
| 2 | 13.9 | $539.39 | $6,747.77 |
| 3 | 8.1 | $464.00 | $3,382.56 |
| 4 | 14.5 | $539.39 | $7,039.04 |
| 5 | 11.3 | $552.00 | $5,613.84 |
| 6 | 1.7 | $539.39 | $825.27 |
| 7 | 3.3 | $400.00 | $1,188.00 |
| TOTAL | | | $27,854.82 |

2. The Forensic Expert's Fees

Defendant contends that Plaintiff should pay the $29,497.47 fee charged by its forensic expert. The $29,497.47 is comprised of 92.4 hours of work performed at $318.75 per hour. Plaintiff argues that, because Defendant would have employed a forensic expert regardless of the alleged misconduct at the deposition, those costs should not shift to Plaintiff. The Court ordered Defendant to respond to this argument. In response, Defendant clarified that "[b]ut for Plaintiff's untruthful testimony, [Defendant] would not have required forensic analysis of Plaintiff's Samsung Note 4 because there would have been no dispute concerning the inaccuracy of the screenshots submitted by Plaintiff." [Doc. 113, p. 8].

This Court understands that an order requiring the payment of legal fees is "limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." Goodyear, 137 S. Ct. at 1184. Where a party would have incurred the cost even in the absence of the discovery violation or other misconduct, "the court lacks a basis for shifting the expense." Id. at 1187. Based on Defendant's representations to the Court, the Court is satisfied that Plaintiff's conduct was the but for cause of the costs incurred.

17

Plaintiff also argues that the expert's billing records lack specificity. Plaintiff is correct that Defendant did not provide detailed accounting of the costs associated with the expert. This is important because review of the expert report shows that the expert analyzed more than just the single screenshot at issue and the phone activity during the pendency of the litigation. As a result, this Court will reduce the amount requested by 25%, resulting in a total award of $22,123.11.

## CONCLUSION

For the foregoing reasons, Defendant's Petition for Reasonable Fees and Costs Incurred in Litigating its Motion for Sanctions [Doc. 101] is **GRANTED IN PART** to the extent the Court finds that Defendant is entitled to attorney's fees and **DENIED IN PART** to the extent that the Court finds that Defendant is not entitled to the full amount it seeks. Plaintiff is **HEREBY ORDERED** to pay Defendant $49,977.93.

**SO ORDERED** this 8th day of February, 2022.

_____
J. P. BOULEE
United States District Judge